UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEE RUSSELL,

    Plaintiff,

v.                                                                 CASE NO: 8:16-CV-912-T-30JSS

CITY OF TAMPA, FLORIDA,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion to Strike Defendant's Expert Witness and Expert Report (Dkt. 18) and Defendant's Response in Opposition (Dkt. 28). The Court, upon review of the motion, response, and being otherwise advised in the premises, grants Plaintiff's motion because Defendant's expert, Christian Yates, will not assist the trier of fact.

### BACKGROUND

On April 15, 2016, Plaintiff Dee Russell, a former employee of Defendant The City of Tampa, filed an action against the City for unlawful retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*, as amended ("ADA") and the Florida Civil Rights Act of 1992, §760.01, Florida Statute, *et seq.* ("FCRA").

Plaintiff was employed at the City as a Solid Waste Collection Driver during the relevant time. At some time during his employment, Plaintiff was diagnosed with a medical

condition that allegedly limited one or more of his major life activities. On July 30, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that the City failed to reasonably accommodate his disability. On March 13, 2014, Plaintiff filed, *pro se,* a lawsuit under the ADA for disability discrimination against the City. Plaintiff was still employed by the City at the time he filed his *pro se* lawsuit.

On December 18, 2014, during the pendency of his ADA lawsuit against the City, Plaintiff was involved in an accident involving the City's solid waste truck. Specifically, while waiting in the queue at the McKay Bay transfer station to unload debris from City vehicle #1240, Plaintiff exited the vehicle to speak to another driver. According to Plaintiff, he believed he had pulled the parking brake prior to exiting the vehicle. However, while he was talking to the other driver, the vehicle began moving forward, went over a speed bump, and struck the vehicle in front of it, causing approximately $6,800 in damages. The accident did not result in any injuries. Plaintiff repeatedly told the police officers who arrived at the accident scene and the City, during its subsequent investigation of the accident, that he had set the brake.[1]

The City ultimately concluded that Plaintiff had not set the brake and, on March 10, 2015, issued Plaintiff a "Letter of Counseling" related to the incident because the accident

---

[1] Although absent from the complaint, it appears Plaintiff was involved in two additional accidents, an October 31, 2014 accident, which the City deemed was non-preventable, and a February 16, 2015 "backing accident." (Dkt. 28).

was preventable. The City relied on the recommendation from its Safety Review Committee, which had concluded that Plaintiff had not pulled the parking brake, the traffic report, and statements from a mechanic who inspected the vehicle after the accident.

On April 1, 2015, Plaintiff took the deposition of Mark Wilfalk, the City's Solid Waste Director, as part of his *pro se* lawsuit against the City, which was still pending at that time. According to Plaintiff, Wilfalk's deposition was "heated" and Wilfalk was "visibly irritated during the deposition." (Dkt. 1).

The complaint alleges that within a month of his deposition, Wilfalk issued Plaintiff a notice of disciplinary action, accusing Plaintiff of making false statements, and thus violating the City's policy on "Moral Turpitude." At a May 7, 2015 hearing, the City showed Plaintiff video footage of the accident, which revealed Plaintiff exiting the vehicle without setting the parking brake. Based on the video, the City terminated Plaintiff's employment for intentionally lying to the police officers and the City when he repeatedly maintained throughout the investigation and grievance process that he had pulled the parking brake.

Plaintiff alleges that the City's stated reason for terminating his employment is "not worthy of belief." (Dkt. 1). Plaintiff contends that the City had already concluded in January 2015, based upon the mechanic's report, that Plaintiff had not set the parking brake. Plaintiff's retaliation claims in this case are premised on the timing of Wilfalk's April 1, 2015 deposition and Plaintiff's May 7, 2015 termination—according to Plaintiff, these two events are causally related. Plaintiff now admits that he did not pull the parking brake.

Plaintiff argues that the real reason he was terminated was because he pursued the initial discrimination case against the City.[2]

On May 8, 2017, the City designated Christian Yates, a mechanical engineer specializing in accident reconstruction, as an expert witness. The City served Yates' expert report on May 10, 2017. Yates opines as follows:

1. The driver of the City of Tampa solid waste truck did not engage the parking brake prior to exiting the vehicle at the time of the accident.
2. The driver of the City of Tampa solid waste truck did not put the vehicle in neutral prior to exiting the vehicle at the time of the accident.
3. The driver of the City of Tampa solid waste truck did not follow the proper procedure to exit his vehicle in that he did not put the vehicle in neutral and apply the parking brake at the time of the accident.
4. The driver demonstrated a habit of not parking the vehicle properly prior to exiting since he did the same thing approximately 5 minutes before the accident.
5. The driver knew, or should have known, that he left the vehicle in drive as he must have put it in neutral after the accident when he engaged the parking brake.
6. The driver knew, or should have known, that he did not put the parking brake on since he engaged the parking brake immediately after the accident.

(Dkt. 18-1).

Plaintiff moves to strike Yates' expert report in its entirety. Plaintiff argues that Yates improperly opines on Plaintiff's credibility; Yates does not have the adequate expertise to testify about Plaintiff's "habit" or what Plaintiff "knew or should have known;" and Yates'

---

[2] With respect to Plaintiff's *pro se* discrimination lawsuit against the City, on October 5, 2015, the district court granted the City's motion for summary judgment and entered judgment in the City's favor. Plaintiff appealed and the Eleventh Circuit affirmed the district court on June 8, 2016. Case No. 8:14-cv-814-EAK-AEP, Dkts. 44 and 50.

testimony as to the causation of Plaintiff's accident will not assist the trier of fact. (Dkt. 18). As explained below, the Court sustains Plaintiff's objections and excludes Yates under *Daubert*.

## **STANDARD**

In federal court, expert opinions must meet the admissibility guidelines announced by the Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and Federal Rule of Evidence 702. Under Rule 702:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Before permitting expert opinion testimony, the court must make certain that the expert employs "in the courtroom the same level of intellectual rigor that characterizes the practice of the expert in the field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999). The court must act as gatekeeper to prevent speculative and unreliable "expert" testimony from reaching the jury. *See Rink v. Cheminova, Inc.,* 400 F.3d 1286, 1291 (11th Cir. 2005) (noting that the "task of evaluating the reliability of expert testimony is uniquely entrusted to the district court under *Daubert*"). The gatekeeping role is "significant" because an "expert's opinion 'can be both powerful and quite misleading.'" *U.S. v. Frazier,* 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *Daubert,* 509 U.S. at 595).

As gatekeeper, the court makes three inquiries: (1) first, whether the expert is qualified to testify competently regarding the matters that he intends to address; (2) second, whether the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) third, whether the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.,* 158 F.3d 548, 562-63 (11th Cir. 1998); *see also Cooper v. Marten Transp., Ltd.,* 539 F. App'x 963, 965-67 (11th Cir. 2013). The party offering the expert opinion testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualification, reliability, and helpfulness. *See Kilpatrick v. Breg, Inc.,* 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *McCorvey v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002)); *see also Sumner v. Biomet, Inc.,* 434 F. App'x 834, 841 (11th Cir. 2011); *Frazier,* 387 F.3d at 1260.

Importantly, although rulings on admissibility under *Daubert* inherently require the court to conduct an exacting analysis of the proffered expert's methodology, it is not the court's role to make ultimate conclusions as to the persuasiveness of the proffered evidence. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333, 1341 (11th Cir. 2003). Indeed, the gatekeeper role is not intended to supplant the adversary system or the role of the jury. *See id.* "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking

shaky but admissible evidence." *Daubert,* 509 U.S. at 596; *see also U.S. v. Ala. Power Co.,* 730 F.3d 1278, 1282-85 (11th Cir. 2013) (explaining that the *Daubert* inquiry "is not intended to supplant" cross-examination and presentation of contrary evidence); *Costa v. Wyeth, Inc.,* No. 8:04-cv-2599-T-27MAP, 2012 WL 1069189, at *2 (M.D. Fla. Mar. 29, 2012).

## **DISCUSSION**

Yates' expert opinion must be excluded under *Daubert* because portions of his expert report are based on pure speculation. More important, the report, in its entirety, would not assist the trier of fact.

Yates, who is experienced in mechanical engineering and accident reconstruction, is not qualified to testify about Plaintiff's "habit" and state of mind. Yet, in paragraph 4 of his expert report Yates concludes, without providing any supporting evidence, that Plaintiff had a "habit of not parking the vehicle properly." In paragraphs 5 and 6, Yates speculates about what Plaintiff "knew, or should have known." (Dkt. 18-1). These opinions are not based upon sufficient facts or data. Moreover, no expert is truly qualified to opine on a person's credibility or state of mind—these determinations are typically left to the finder of fact.

Defendant appears to concede that it would be inappropriate for Yates to speculate about Plaintiff's habit, state of mind, and credibility. However, Defendant argues that Yates should be permitted to testify as to how vehicle #240 reacted, as shown on the accident video, to rebut the reasonableness of Plaintiff's belief that he had set the brake. This testimony, like the entirety of Yates' report, would not assist the trier of fact because Plaintiff

now admits that he did not set the parking brake. Therefore, paragraphs 1-3 of Yates' expert report, where he opines that Plaintiff did not engage the parking brake, did not put the vehicle in neutral, and did not follow proper procedure, are superfluous because Plaintiff concedes these points.

Finally, it is important to note that the reasonableness of Plaintiff's initial belief that he had set the parking brake is irrelevant to the legal claims in this case. Plaintiff's retaliation claim alleges that the real reason behind his termination was retaliation for filing the *pro se* discrimination lawsuit against the City. The City argues that it terminated Plaintiff because, after the City reviewed the video of the accident, the City concluded that Plaintiff repeatedly lied about setting the parking brake. In order to demonstrate that the City's stated reason is pretext, the inquiry focuses on the City's beliefs not on Plaintiff's beliefs. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Indeed, the City's non-discriminatory reason could be based on erroneous facts as long as the reason was not related to the protective activity. In other words, whether Plaintiff actually lied about setting the brake is irrelevant to the analysis. *See Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991) (pretext inquiry is limited to whether the employer *believed* the employee was guilty of misconduct and if so, whether that was the reason behind the discharge; evidence that the employee did not actually engage in the misconduct is irrelevant).

In sum, Yates' opinion, which focuses on the reasonableness of Plaintiff's actions—and which was clearly not available to the City at the time that the City made the decision to terminate Plaintiff—would offer no assistance to the trier of fact.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff's Motion to Strike Defendant's Expert Witness and Expert Report (Dkt. 18) is GRANTED.

2. The Court excludes Defendant's designated expert Christian Yates from this case.

**DONE** and **ORDERED** in Tampa, Florida on June 15, 2017.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record