UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEE RUSSELL,

    Plaintiff,

v.                                                     Case No: 8:16-cv-912-T-30JSS

CITY OF TAMPA, FLORIDA,

    Defendant.
_____/

## ORDER

THIS MATTER is before the Court on Plaintiff's Amended Motion to Quash Non-Party Subpoenas or, Alternatively, Amended Motion for Protective Order ("First Motion") (Dkt. 26), and Defendant's response in opposition (Dkt. 30), and Plaintiff's Motion to Quash Non-Party Loomis Subpoena or, Alternatively, Motion for Protective Order ("Second Motion") (Dkt. 29), and Defendant's response in opposition (Dkt. 34). For the reasons that follow, the First Motion is granted in part and denied in part and the Second Motion is granted.

## BACKGROUND

Plaintiff was employed by Defendant as a Solid Waste Collection Driver. (Dkt. 1 ¶ 9.) In July 2013, Plaintiff alleges he was diagnosed with a medical condition that Defendant failed to reasonably accommodate. (*Id.* ¶¶ 11–12.) He filed a charge of discrimination on July 30, 2013, and, after exhausting his administrative remedies, filed a lawsuit in state court on March 13, 2014, alleging that Defendant failed to reasonably accommodate his disability ("Discrimination Lawsuit").[1] (*Id.* ¶¶ 12–13.)

---

[1] Plaintiff's Discrimination Lawsuit was removed to federal court. *Dee Russell v. City of Tampa*, 8:14-cv-00814-EAK-AEP (M.D. Fla. April 7, 2014).

Plaintiff alleges that while operating a solid waste vehicle as Defendant's employee on December 18, 2014, he was involved in an accident. (*Id.* ¶ 14.) Specifically, while waiting in line, he stopped and exited the vehicle to speak to another solid waste vehicle driver. (*Id.* ¶¶ 15–17.) After speaking to the other driver for about five to ten minutes, his vehicle moved, hitting the back of the truck in front of it. (*Id.* ¶¶ 17–18.) While Plaintiff believed he pulled the parking brake before exiting his vehicle, Defendant, as a result of its own investigation of the accident, concluded that Plaintiff did not pull the parking brake and, therefore, admonished Plaintiff. (*Id.* ¶¶ 19–26.)

In response to Defendant's determination, Plaintiff filed a grievance on January 29, 2015. (*Id.* ¶ 27.) After a hearing, Defendant issued a "Letter of Counseling," finding that the December 18, 2014 accident was preventable. (*Id.* ¶¶ 29–36.) In April 2015, as part of his Discrimination Lawsuit, Plaintiff deposed Defendant's Solid Waste Director ("Director"). (*Id.* ¶ 37.) Within a month of the deposition, Plaintiff alleges that the Director issued a notice of disciplinary action to Plaintiff, accusing Plaintiff of making false statements regarding his belief that he set the parking brake to police officers who came to the scene of the accident and to Defendant's officials, including the Director, during Defendant's investigation of the accident and the grievance process. (*Id.* ¶¶ 40–47.) At a hearing in connection with its disciplinary action against Plaintiff, Defendant showed Plaintiff video footage of the accident, which showed that Plaintiff did not pull the parking brake. (*Id.* ¶¶ 44–47.) Thereafter, Defendant terminated Plaintiff, concluding that he intentionally lied in violation of Defendant's policies. (*Id.*)

In his Complaint, Plaintiff alleges that Defendant terminated him after he deposed the Director in retaliation for prosecuting his Discrimination Lawsuit. (*Id.* ¶¶ 55–56.) As a result, Plaintiff alleges he has suffered, in relevant part, lost wages, lost benefits, emotional distress, loss of enjoyment of life, and mental anguish. (*Id.* ¶ 57.) In response, Defendant alleges that it

terminated Plaintiff after learning that he "falsified and misrepresented facts during the course of a grievance hearing" in violation of Plaintiff's employment contract. (Dkt. 10 at 7.) Further, Defendant alleges that Plaintiff has no damages or failed to mitigate his alleged damages. (*Id.*)

In the motions, Plaintiff seeks to quash subpoenas issued to his medical insurance provider, medical provider, cell phone carrier, and current employer. Through these non-party subpoenas, Defendant seeks Plaintiff's medical records, cell phone records for the day of and surrounding the accident, and personnel file from his current employer. Plaintiff makes concessions as to the relevance of some of the discovery sought through the subpoenas, but argues generally that the subpoenas are overly broad.

## APPLICABLE STANDARDS

Courts maintain great discretion to regulate discovery. *Patterson v. U.S. Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990). The court has broad discretion to compel or deny discovery. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Through discovery, parties may obtain materials that are within the scope of discovery, meaning they are nonprivileged, relevant to any party's claim or defense, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Courts consider the following factors: (1) "the importance of the issues at stake in the action," (2) "the amount in controversy," (3) "the parties' relative access to relevant information," (4) "the parties' resources," (5) "the importance of the discovery in resolving the issues," and (6) "whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

A court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies." *Id.* at 45(d)(3)(A)(iii). Further, a protective order may be issued for good cause to protect a person from annoyance, embarrassment,

oppression, or undue burden or expense, by forbidding the discovery, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters. *Id.* at 26(c)(1)(A), (D). The party seeking a protective order has the burden of demonstrating good cause. *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005). "'Good cause' is a well established legal phrase. Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).

## ANALYSIS

As a preliminary matter, Plaintiff has standing to move to quash the subpoenas because he alleges a "personal right or privilege" with respect to the information sought in the subpoenas. *Auto-Owners Ins. Co.*, 231 F.R.D. at 429 (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)). Further, as a party, Plaintiff has standing to move for the entry of a protective order on the basis that "the subpoenas seek irrelevant information." *Id*; *see* Fed. R. Civ. P. 26(b)(2)(C)(iii).

**I.    First Motion**

In the First Motion, Plaintiff seeks an order either quashing or issuing a protective order for subpoenas Defendant served on the following three non-parties: (1) Plaintiff's medical insurance provider UnitedHealthcare of Florida, Inc. ("United"), (2) Plaintiff's medical provider Wellness Center ("Wellness"), and (3) Plaintiff's cell phone service provider T-Mobile USA, Inc. ("T-Mobile"). (Dkt. 26.)

Defendant seeks all of Plaintiff's medical records from June 2014 to the present from United and all of Plaintiff's medical records from January 2015 through the present from Wellness. (Dkts. 26-1, 26-2.) Defendant seeks Plaintiff's cell phone records from December 17, 2014,

through December 20, 2014, from T-Mobile. (Dkt. 26-3.) For the reasons that follow, the First Motion is granted in part and denied in part.

### A. Medical Records

Plaintiff concedes that he has put his mental condition in controversy and therefore does not object to United's and Wellness's production of his psychiatric records and medical bills for "a limited time period prior to his termination" through his May 7, 2015 termination, specifically from June 1, 2014, through December 31, 2015. (Dkt. 26 at 7–8.) He does, however, object to the production of any non-psychiatric records that do not relate to his claim for emotional damages. (*Id.*)

In response, Defendant explains that in his Discrimination Lawsuit, Plaintiff alleged he was diagnosed with Post-Traumatic Stress Disorder ("PTSD") after being involved in an accident while driving a solid waste truck while working for Defendant in June 2012. (Dkt. 30 at 3); (*Russell*, 8:14-cv-00814-EAK-AEP, Dkt. 2.) Plaintiff requested Defendant's permission to drive a particular solid waste truck to ease his PTSD symptoms, which Plaintiff alleges Defendant denied. In the Discrimination Lawsuit, the Court granted Defendant's motion for summary judgment, finding that Defendant did not fail to reasonably accommodate Plaintiff's disability. *Russell*, 8:14-cv-00814-EAK-AEP, Dkt. 44.

Relevant to this case, Defendant states that in the course of discovery in the Discrimination Lawsuit, Plaintiff averred in response to interrogatories that he first began experiencing symptoms of PTSD in June 2013, and that records obtained from Wellness showed that as early as June 2011 Plaintiff reported a two-year history of difficulty sleeping. (Dkt. 30 at 8–10.) Defendant explains it is entitled to obtain these medical records to "distinguish between those injuries and damages which are alleged to have resulted from the alleged wrongful, retaliatory termination [in this case],

and Plaintiff's prior medical condition or his PTSD." (*Id.* at 10.) Essentially, because Plaintiff has a history of PTSD and associated symptoms that he alleges are traceable to a separate accident in June 2012, Defendant argues that it is entitled to discovery of Plaintiff's medical records to defend the sources of Plaintiff's claim of emotional distress caused by his May 2015 termination stemming from the December 2014 accident. (*Id.* at 11.)

The Court agrees with Plaintiff that Defendant's requests for "all medical records" from United and Wellness are overly broad. As Plaintiff argues, only Plaintiff's psychiatric records and related medical bills are relevant to Plaintiff's allegations of experiencing emotional distress, loss of enjoyment of life, and mental anguish, his request for compensation for these damages, and Defendant's defense of these claims. *See Cameron v. Supermedia, LLC*, No. 4:15CV315-MW/CAS, 2016 WL 1572952, at *3 (N.D. Fla. Apr. 19, 2016) (internal citations and quotations omitted) (discussing discovery relevant to a claim for emotional distress and explaining that "[a] defendant is entitled to production of medical records that have a logical connection to the plaintiff's claims of injury" instead of a full disclosure of all of a plaintiff's medical records "unrestricted as to time or circumstance simply because some level of emotional distress is claimed").

As to the time span for such records from United and Wellness, the subpoenas seek records from United beginning in June 2014 and from Wellness beginning January 2015. (Dkts. 26-1, 26-2.) Plaintiff does not object to the time span beginning on June 1, 2014. (Dkt. 26 at 8.) As to the end date, the subpoenas seek records through the present, but Plaintiff contends that the end date should be December 31, 2015. (*Id.*) However, Plaintiff alleges that he suffers emotional distress, loss of enjoyment of life, and mental anguish due to his termination and does not specify an end date for this alleged suffering. (Dkt. 1 ¶¶ 57, 64, 70.) Further, his claim for compensatory damages

could include damages for psychiatric care after December 31, 2015, because Plaintiff does not specify a date range. (*Id.* at 9–10.) Therefore, Plaintiff's psychiatric records through the present are relevant to the claims and defenses in this case. *See* Fed. R. Civ. P. 26(b)(1).

Accordingly, the scope of the subpoenas to United and Wellness are modified as follows: Plaintiff's psychiatric records and psychiatric medical bills spanning from June 2014 to the present. *See id.* 45(d)(3)(A), 26(b)(2)(C)(iii), 26(c)(1)(D).

### B. Cell Phone Records

Defendant contends that the video footage of the December 18, 2014 accident shows Plaintiff using his cell phone shortly after the accident to send text messages and place phone calls. (Dkt. 30 at 6.) Defendant contends that Plaintiff's cell records after the accident are relevant to its defense that it lawfully terminated Plaintiff for his misrepresentations regarding the accident because "Plaintiff likely was communicating with someone regarding how the accident actually took place, and that those communications would likely uncover admissions by the Plaintiff that he was aware (at that time) that he was the cause of the accident." (*Id.* at 6–7.)

In the First Motion, Plaintiff contends that Defendant's request for Plaintiff's cell phone records for a four-day span around the December 18, 2014 accident is overly broad. (Dkt. 26 ¶¶ 9–12.) Cell records outside the time of the accident are irrelevant, Plaintiff argues, especially because Plaintiff was using his mother's cell and, therefore, the four-day span will include her irrelevant phone records. (*Id.* ¶¶ 14–16.) Nonetheless, Plaintiff has agreed to request his cell phone records from T-Mobile "for calls made or received by Plaintiff during the moments before, during and after the accident," specifically the "entire two-hour period spanned [by the] video footage" of the December 18, 2014 accident. (*Id.* ¶ 13.) Defendant, however, questions whether Plaintiff has any ability to obtain these records from T-Mobile because Plaintiff stated that he "is

unable to determine who his mother's cell phone service provider was at the time of the accident in 2014." (Dkt. 26 ¶ 13, n.6); (Dkt. 30 at 7.)

The subpoena to T-Mobile seeks information relevant to Defendant's defenses that Plaintiff misrepresented facts related to the December 18, 2014 accident and that "Plaintiff exhibited unacceptable behavior in the performance of his job duties." (See Dkt. 10 at 7, 8.) Specifically, as Defendant argues, the cell records may show individuals with information relevant to Plaintiff's account of the nature of the accident. However, the four-day time span of the subpoena is overly broad. Instead, the time span of Plaintiff's cell records that is relevant is the two-hour time span on the date of the accident, December 18, 2014, of which Defendant has video footage showing the accident and Plaintiff's use of a cell phone immediately after the accident.

Accordingly, the scope of the subpoena to T-Mobile is modified as follows: Plaintiff's cell phone records for cell phone number (813) 598-4302 on December 18, 2014, for the two-hour time span matching Defendant's video of the December 18, 2014 accident, which Defendant shall specify. *See* Fed. R. Civ. P. 45(d)(3)(A), 26(b)(2)(C)(iii), 26(c)(1)(D).

## II. Second Motion

In the Second Motion, Plaintiff seeks an order either quashing or issuing a protective order for a subpoena Defendant served on Plaintiff's current employer Loomis Armored ("Loomis"). (Dkt. 29.) Defendant seeks Plaintiff's "employment records" and "all other evidence relating to" Plaintiff's employment with Loomis including, without limitation, the following: records of Plaintiff's earnings and attendance; the name of Loomis's health and life insurance carrier and copies of Plaintiff's applications for and physical examinations related to insurance; and all documentation regarding Plaintiff's work-related injuries. (Dkt. 29-1.)

Plaintiff argues that Defendant has not provided an explanation of the relevance of the requested documents. (Dkt. 29 at 6.) Further, to the extent Defendant seeks Plaintiff's current wages as it relates to Defendant's mitigation of damages defense, Plaintiff states that he has agreed to produce his income documentation from his employment subsequent to his employment with Defendant. (*Id.* at 7.) Thus, Plaintiff argues the Court must quash the subpoena because the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive," and because Defendant "has had ample opportunity to obtain the information by discovery in the action." *See* Fed. R. Civ. P. 26(b)(2)(C)(i), (ii).

In response, Defendant argues that records from Loomis are relevant for the following reasons:

> [T]he Loomis records are relevant to show Plaintiff's current salary, which will off-set any claims for back and front pay. Additionally, the City is entitled to the requested information in order to determine whether Plaintiff is working full time or is under-employed, whether Plaintiff is anticipating a raise, promotion or bonuses in the near future, and other similar information relevant to the City's defenses.
>
> * * *
>
> Plaintiff has requested front pay, back pay and re-instatement. As such, Plaintiff has opened the door relative to his personnel file, and any physical examination documents which would show his fitness for duty or for hire. Likewise, Plaintiff's request for front pay and re-instatement opens the door to records related to work place injuries/accidents that would preclude re-instatement.

(Dkt. 34 at 6, 8.) Finally, Defendant argues that records from Loomis "will show whether any of the emotional distress alleged by Plaintiff . . . has manifested itself in his current employment." (Dkt. 34 ¶ 11.)

Defendant's claim for Plaintiff's entire personnel file with Loomis is overly broad. Generally, personnel files and records "are confidential in nature" and "should be protected from wide dissemination." *Maxwell v. Health Ctr. of Lake City, Inc.*, No. 3:05CV1056-J-32MCR, 2006

WL 1627020, at *2 (M.D. Fla. June 6, 2006) (internal quotation and citation omitted). Also, Defendant's argument that Plaintiff's personnel file with his current employer may show whether Plaintiff's alleged emotional distress as a result of his termination has "manifested itself" in his employment with Loomis is speculative and seeks irrelevant information because there are no allegations regarding Plaintiff's inability to work due to emotional distress.

Further, while Defendant's request for records relating to any work-related injuries and documentation relating to applications by and physical examinations of Plaintiff in connection with his medical and life insurance may bear on his eligibility to be rehired, the burden and expense of this proposed discovery greatly outweighs any likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

However, a former employee's subsequent salary is "relevant to the issue of mitigation of damages." *Maxwell*, 2006 WL 1627020, at *3. Therefore, records of Plaintiff's current earnings from Loomis are relevant to Defendant's mitigation of damages defense as well as to the measure of Plaintiff's claims for front and back pay. (Dkt. 1 at 9–10.) As Plaintiff has agreed to produce documentation of his income from subsequent employment, including Loomis (Dkt. 29 at 7), a protective order is warranted because Plaintiff's current earnings from Loomis can be obtained from a source that "is more convenient, less burdensome, or less expensive." *See* Fed. R. Civ. P. 26(b)(2)(C)(i). Plaintiff shall produce such documentation within fourteen days of this Order.

Accordingly, it is

**ORDERED**:

1. Plaintiff's Amended Motion to Quash Non-Party Subpoenas or, Alternatively, Amended Motion for Protective Order (Dkt. 26) is **GRANTED** in part and **DENIED** in part.

2. Plaintiff's Motion to Quash Non-Party Loomis Subpoena or, Alternatively, Motion for Protective Order (Dkt. 29) is **GRANTED**. Plaintiff is directed to produce documentation of

his income from employment subsequent to his employment with Defendant, including with Loomis, within fourteen (14) days of this Order.

**DONE** and **ORDERED** in Tampa, Florida, on July 5, 2017.

_____
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record