# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

DEE RUSSELL,

    Plaintiff,

v.                                                       CASE NO: 8:16-CV-912-T-30JSS

CITY OF TAMPA, FLORIDA,

    Defendant.

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant's Motion for Summary Judgment (Dkt. 40) and Plaintiff's Response in Opposition (Dkt. 44). The Court, having reviewed the motion, response, record evidence, and being otherwise advised in the premises, concludes that Defendant's motion should be granted and final judgment should be entered in Defendant's favor because Plaintiff failed to show that Defendant's reason for Plaintiff's termination was pretextual.

## BACKGROUND

On April 15, 2016, Plaintiff Dee Russell, a former employee of Defendant The City of Tampa, filed an action against the City for unlawful retaliation in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq.*, as amended ("ADA") and the Florida Civil Rights Act of 1992, §760.01, Florida Statute, *et seq.* ("FCRA").

Plaintiff was employed at the City as a Solid Waste Collection Driver during the relevant time. At some time during his employment, Plaintiff was diagnosed with a medical

condition that allegedly limited one or more of his major life activities. On July 30, 2013, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that the City failed to reasonably accommodate his disability. On March 13, 2014, Plaintiff filed, *pro se,* a lawsuit under the ADA for disability discrimination against the City. Plaintiff was still employed by the City at the time he filed his *pro se* lawsuit.

On December 18, 2014, during the pendency of his ADA lawsuit against the City, Plaintiff was involved in an accident involving the City's solid waste truck. Specifically, while waiting in the queue at the McKay Bay transfer station to unload debris from City vehicle #1240, Plaintiff exited the vehicle to speak to another driver. According to Plaintiff, he believed he had pulled the parking brake prior to exiting the vehicle. However, while he was talking to the other driver, the vehicle began moving forward, went over a speed bump, and struck the vehicle in front of it, causing approximately $6,800 in damages.[1]

On January 15, 2015, the City's Solid Waste Safety Review Committee, which was comprised of seven of Plaintiff's former co-workers, reviewed the December 18, 2014 accident. The Safety Review Committee unanimously found that the accident was "preventable." On January 26, 2015, Plaintiff was issued a letter that outlined the Safety Review Committee's findings.

On January 29, 2015, Plaintiff appealed the Safety Review Committee's finding that the December accident was "preventable," by filing a Step 1 Grievance. In his Step 1

---

[1] Plaintiff was involved in two additional accidents, an October 31, 2014 accident, which the City deemed was non-preventable, and a February 16, 2015 preventable "backing accident."

Grievance, Plaintiff alleged that the members of the panel were not qualified to evaluate the accident, that they did not ask enough questions, and that the panel "disregarded" the facts that were presented to them. Plaintiff noted that a mechanic inspected the truck at the scene of the accident and determined that it was possible for the brakes to release while parked.

On February 5, 2015, Plaintiff's supervisor, Nathan McGriff, issued Plaintiff a "Letter of Counseling" for the December 18, 2014 accident. Plaintiff refused to sign the Letter of Counseling.

On February 6, 2015, McGriff and the Residential Services Manager, Kiana Bell (later, Kiana Romeo), denied Plaintiff's Step 1 Grievance. In their response, they stated, in relevant part, that the Florida Traffic Crash Report referenced that the truck's brakes "held" during its review of the accident; that the mechanic did not recall stating that the brakes may have released while parked; and that a request would be placed with the City of Tampa Fleet Maintenance Department to check the vehicle's brake system. The response also noted that: "At this time your requested remedy to change your accident from Preventable to Non-Preventable is denied." (Dkt. 40-13).

Plaintiff escalated his grievance to a Step 2 Grievance. The Step 2 Grievance hearing was conducted on February 24, 2015, by Director Mark Wilfalk. At the hearing, Plaintiff maintained that the accident was non-preventable and caused by a mechanical failure. Plaintiff also stated that he pulled the parking brake. At the conclusion of the hearing, Wilfalk told Plaintiff that he would thoroughly investigate his grievance.

During Wilfalk's investigation, the subject vehicle was returned to the City from the vendor who had conducted the repairs. The repair work orders confirmed that there were no defects in the vehicle's air brakes. The memory cards from the vehicle's camera system were obtained. At this time, the City was able to view, for the first time, the footage of the accident. McGriff was the first City employee who viewed the footage of the accident. He then turned the video over to Wilfalk, who was in the middle of his investigation of Plaintiff's Step 2 Grievance.

The video footage, which contains audio, shows Plaintiff exiting the vehicle without applying the air brakes or turning off the ignition. According to the City, the video made clear that Plaintiff had been lying to the police and the City during the investigation of his grievances when he consistently stated and maintained that he had properly secured the vehicle's air brake system. According to the City, the video formed the basis of the City's determination that Plaintiff intentionally misrepresented facts and was in violation of the Moral Turpitude provision in his employment contract.

After viewing the video, Wilfalk drafted a document that outlined his investigation of Plaintiff's Step 2 Grievance. The record reflects that on March 13, 2015, Wilfalk sent an e-mail to Debra Cole, his assistant, with a copy to Daryl Stewart, the Chief of Administration, Adriana Colina, the Employee Relations Specialist/Human Resources, and Kiana Bell, the Superintendent of Residential Services, that attached a document. The body of the e-mail states: "Debra, Please proof and draft on the appropriate response form. Thanks, Mark W." (Dkt. 40-17). The attached document states:

> On February 24, 2015, a Step II grievance hearing was held to discuss an incident you were involved in while operating an automated side loading garbage truck number 1240. The details of this incident were reviewed by the department's Incident Review Panel (IRP) and determined to be preventable.
>
> After the hearing, I had the opportunity to review the Tampa Police Department report, the IRP findings, the Division of Fleet Maintenance's post inspection report, and speak with the department's Solid Waste Mechanic, Jonathan Mullins who responded to the scene.
>
> Additional research into this matter indicates you neglected to properly set and check your assigned vehicle's parking breaks [sic] while waiting in line to unload waste at the McKay Bay Waste-to-Energy (WTE) facility. Your failure to do so caused your truck to roll forward and collide into the rear end of a Republic Services, Inc. front-end loading garbage truck.
>
> I have not been presented with enough factual evidence to contradict the findings of the IRP, police report, post-incident inspection report, or other City staff members who investigated this incident. Therefore, your requested remedy to reverse the decisions of the IRP is denied.

(Dkt. 40-17).

The record reflects that Human Resources, specifically, Colina, used the information contained in the document from Wilfalk to draft a Notice of Disciplinary Action, which would contain what City policies Plaintiff had violated.

On March 24, 2015, Wilfalk was personally served at work with a subpoena to testify at a deposition in Plaintiff's underlying ADA lawsuit against the City, which was still pending.

On March 25, 2015, Colina sent an e-mail to Wilfalk and Stewart, with the subject: "RESTRICTED - DRAFT FOR REVIEW." The body of the e-mail states: "Good afternoon, Please see the attached - it is my first draft. Let me know your thoughts . . . Thanks, Adri."

The attached document is titled "Notice of Disciplinary Action" and contains detailed facts about the City's investigation of Plaintiff's December 18, 2014 accident. In relevant part, the Notice references the video footage of the accident and states: "In the video you are clearly seen sitting in the seat for quite some time, you motion to someone, acknowledging their presence in front of you, and then you abruptly exit the cab of the vehicle. You never reached for the dashboard or for any type of parking brake. It was not the result of faulty equipment that the accident occurred but, rather, your negligence." The Notice also states that Plaintiff violated City Policy B28.2A.3(c)(1) Neglect of Duty and (d)(1) "Falsification, misrepresentation, or material omission of statements, testimony or any document or record completed in the course of employment . . ." The Notice concludes that: "Your attention to this matter is requested to prevent future occurrences of a similar nature. Failure on your behalf to correct this behavior will result in further disciplinary action being administered, up to and including suspension or dismissal." (Dkt. 40-17).

Numerous e-mails reflect that the Notice of Disciplinary Action went through several drafts over the next month. During this drafting process, on April 1, 2015, Plaintiff took Wilfalk's deposition as part of his *pro se* lawsuit against the City, which was still pending at that time. According to Plaintiff's Affidavit, after the conclusion of Wilfalk's April 1, 2015 deposition, Wilfalk's "facial expression, body language and his abrupt movement when getting out of his chair, indicated to [Plaintiff] that he was not happy." (Dkt. 45).

The final draft of the Notice of Disciplinary Action was completed on or about April 27, 2015. The e-mails in the record reflect that the final draft was a result of collaboration between the management team and human resources.

On May 4, 2015, the City provided Plaintiff with the final copy of the Notice of Disciplinary Action and a hearing was scheduled for May 7, 2015. Wilfalk, Stewart, Bell, McGriff, and Colina, among others, attended the hearing. During the hearing, Plaintiff was presented with the video, which showed him jumping out of the truck without applying the air brakes. According to Plaintiff's Affidavit, after reviewing the video, he realized he was mistaken when he had said that he had set the brakes and he told the City that he was mistaken. The City terminated Plaintiff for violating City Policy B28.2A.3.(d)(1) Moral Turpitude at the conclusion of the May 7, 2015 hearing.

According to Plaintiff, the City terminated him because he engaged in protective activity—the filing of the 2014 ADA lawsuit against the City—more specifically, the service of the subpoena on Wilfalk for his deposition and the taking of Wilfalk's deposition. Plaintiff's entire theory rests on the timing of these events. As explained below, even if Plaintiff could establish a prima facie case of retaliation, he fails to direct the Court to any credible evidence of pretext, i.e., that the real reason behind the City's termination was related to Plaintiff's protective activity.[2]

---

[2] With respect to Plaintiff's *pro se* discrimination lawsuit against the City, on October 5, 2015, the district court granted the City's motion for summary judgment and entered judgment in the City's favor. Plaintiff appealed and the Eleventh Circuit affirmed the district court on June 8, 2016. Case No. 8:14-cv-814-EAK-AEP, Dkts. 44 and 50.

## **SUMMARY JUDGMENT STANDARD**

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*

*Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## **DISCUSSION**

Courts assess ADA and FCRA retaliation claims under the same framework as retaliation claims arising under Title VII. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997); *see also Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) ("[D]ecisions construing Title VII guide the analysis of claims under the Florida Civil Rights Act."). Because this case is based on circumstantial evidence, the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1273) applies.

Under this framework, Plaintiff must first establish a prima facie case of retaliation, which consists of the following elements: (1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and his protected expression. *See Luna v. Walgreen Co.*, 347 Fed.Appx. 469, 472 (11th Cir. 2009) (citing *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001)). "The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse employment action,"

however, "mere temporal proximity, without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

Once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to articulate a non-retaliatory reason for its treatment of the employee. *See Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer presents a legitimate explanation for its actions, the burden then returns to the plaintiff to show that the explanation is pretextual. *See id.* To establish pretext, a plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *McCann v. Tillman,* 526 F.3d 1370, 1375-76 (11th Cir. 2008).

Plaintiff has the ultimate burden of proving by a preponderance of the evidence "that the legitimate reasons offered by the employer for taking the adverse action were pretexts for unlawful retaliation, and that the plaintiff's protected activity was the 'but-for' cause of the adverse action." *Mealing v. Georgia Dept. of Juvenile Justice,* 564 Fed.Appx. 421, 427 (11th Cir. 2014) *cert. denied*, 135 S. Ct. 1165 (2015) (internal citations omitted). Notably, the pretext inquiry focuses on the employer's beliefs and whether the employer provided an honest explanation for its actions. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). The employee's beliefs as to the wisdom of the employer's decision are largely irrelevant. *See id.*

Plaintiff claims that his May 7, 2015 termination was related to the following protective activities: (1) the March 2014 filing of his ADA lawsuit against the City; (2) the March 24, 2015 service of the subpoena on Wilfalk for his deposition; and (3) the taking of Wilfalk's deposition on April 1, 2015. As explained below, each claim fails as a matter of law.

## I. The March 2014 ADA Lawsuit against the City

The record contains no evidence establishing any link between the filing of Plaintiff's March 2014 ADA lawsuit and Plaintiff's termination, which occurred more than one year later. Accordingly, any claim based on this protective activity fails as a matter of law because Plaintiff cannot establish a prima facie case of retaliation. Notably, Plaintiff appears to concede this point because his response in opposition focuses on the timing of Wilfalk's deposition, which the Court turns to next.

## II. The March 24, 2015 Service on Wilfalk for His Deposition

Plaintiff argues that the service of the subpoena on Wilfalk for his deposition in connection with Plaintiff's pending ADA lawsuit against the City was related to Plaintiff's termination. Because the temporal proximity of these events (less than two months) is very close, the Court will assume that Plaintiff has established a prima facie case of retaliation. The burden now shifts to the City to establish a legitimate, non-discriminatory reason for Plaintiff's termination. The City has met its burden and Plaintiff has not established any pretext.

The record is undisputed that during Wilfalk's investigation of Plaintiff's Step 2 Grievance, the City reviewed the video of the December 2014 accident and discovered that Plaintiff had not set the parking brake, despite Plaintiff's protestations that he had set the brake. The record reflects that on March 13, 2015, Wilfalk sent an email to Debra Cole, his assistant, with a copy to Daryl Stewart, the Chief of Administration, Adriana Colina, the Employee Relations Specialist/Human Resources, and Kiana Bell, the Superintendent of Residential Services, that attached a document, which contained the conclusions of Wilfalk's investigation and which Human Resources then used to determine what policies Plaintiff had violated. The record is undisputed that the drafting of Plaintiff's Notice of Disciplinary Action was a collaboration between Wilfalk, other members of management, and Human Resources.

The record is also undisputed that the City terminated Plaintiff for violating its policy on Moral Turpitude immediately after the May 7, 2015 hearing in which the City showed Plaintiff the video of the accident and then questioned Plaintiff about it. The record is undisputed that the City believed that the video of the accident, which showed that Plaintiff had not set the parking brake, was proof that Plaintiff had lied during the investigation.

Plaintiff does not establish any evidence of pretext. Plaintiff's response focuses on what he believed. For example, Plaintiff is emphatic that, at the time of the accident and during the subsequent investigation, he believed that he had set the parking brake. And Plaintiff argues that he acknowledged to the City at the May 7, 2015 hearing that his belief about setting the brake was mistaken. None of this is relevant. What matters is what the City

believed and whether any of those beliefs are really pretext. The record contains no genuine issue on this point.

The record is undisputed that the City concluded that Plaintiff repeatedly lied about setting the parking brakes and that these lies violated the City's Moral Turpitude policy. Even if the City were mistaken, there is simply no evidence that Plaintiff's termination was related to the service of the subpoena on Wilfalk. Indeed, there is no evidence that Wilfalk had any retaliatory animus against Plaintiff whatsoever. There is also no evidence that Wilfalk, who Plaintiff claims was the ultimate or only decisionmaker, inappropriately influenced any of the other City employees who were involved in the termination decision.[3] It is worth repeating that the timing of the events also belies any pretext argument because Wilfalk drafted the document which served as the catalyst to the City's termination decision *before* he was served with the subpoena.

In sum, Plaintiff has not established that the protective activity of serving Wilfalk with a subpoena for his deposition in connection with Plaintiff's ADA lawsuit against the City had anything to do with his termination. Even assuming a prima facie case is met, the City has provided a nondiscriminatory reason for Plaintiff's termination and Plaintiff has provided no evidence establishing pretext.

---

[3] On this point, the Court emphasizes that even if it assumed that Wilfalk was the only decisionmaker, Plaintiff does not establish any pretext because there is no evidence that Wilfalk's termination decision was related to the service of the subpoena on him.

**III.     Wilfalk's April 1, 2015 Deposition**

Plaintiff argues that Wilfalk's April 1, 2015 deposition was also related to Plaintiff's termination. Because the temporal proximity of these events (approximately one month) is very close, the Court will assume that Plaintiff has established a prima facie case of retaliation. The burden now shifts to the City to establish a legitimate, non-discriminatory reason for Plaintiff's termination. The City has met its burden and Plaintiff has not established any pretext for the same reasons as the Court explained above with respect to the service of the subpoena on Wilfalk for his deposition. Simply put, Plaintiff has not pointed to any evidence that the real reason behind his termination was because he took Wilfalk's deposition in connection with the ADA lawsuit.

The extensive record in this case does not show even a scintilla of evidence that Wilfalk had any retaliatory animus against Plaintiff. Even Plaintiff's Affidavit is insufficient to create a material issue for trial. Plaintiff's Affidavit merely states that at the conclusion of Wilfalk's April 1, 2015 deposition, Wilfalk's face, body language, and "abrupt movement" when he got out of his chair indicated that he "was not happy" and then the City terminated him approximately one month later. (Dkt. 45). Even if true, this does not establish pretext because it relies on the timing of the events, which, although perhaps enough to establish a prima facie case, is insufficient to show that the City's real reason behind the termination was based on the taking of the deposition. As explained in more detail above, Wilfalk drafted the March 13, 2015 e-mail containing his findings of his investigation into Plaintiff's Step 2 Grievance before his April 1, 2015 deposition. In other

words, the events that ultimately led to Plaintiff's termination were already set in motion at the time of Wilfalk's deposition.

Most of Plaintiff's arguments on the issue of pretext rely on the temporal proximity of the events. Plaintiff then surmises that his termination must have been related to his protective activities. In order to create a genuine issue of fact, Plaintiff needs to present "concrete evidence in the form of specific facts" rebutting the City's nondiscriminatory reason. *See Earley v. Champion Intern. Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990); *see also Leigh v. Warner Bros., Inc.,* 212 F.3d 1210, 1217 (11th Cir. 2000) (explaining that "conclusory allegations without specific supporting facts have no probative value" in opposing summary judgment). Plaintiff has not done that here.

Plaintiff also attempts to establish pretext by outlining in his response a list of ten purported disputed facts. While Plaintiff is correct that there are a number of disputes in the record, none of them are material to the legal claims at hand. The purported disputed facts, even if interpreted in a light most favorable to Plaintiff, the non-movant, are immaterial to the issue of pretext because none of them establish that Plaintiff's protective activities were the real reason behind his termination. This attempt to muddy the waters fails.

Finally, Plaintiff's argument that the City treated a similarly-situated employee more favorably fails because, in order to show pretext, Plaintiff must demonstrate that the comparators are similarly situated in all relevant respects. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003); *see also Burke-Fowler v. Orange Cty., Fla.*, 447 F.3d 1319, 1323 & n.2 (11th Cir. 2006) (noting that the quantity and quality of the

comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions).

In sum, even assuming Plaintiff established a prima facie case of retaliation, Plaintiff has not shown that the City's reasons for its employment decisions were pretextual.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendant's Motion for Summary Judgment (Dkt. 40) is granted.

2. Defendant's Motion for Leave to File Reply (Dkt. 53) is denied as moot.

3. Defendant's Motion to Strike (Dkt. 54) is denied as moot.

4. The Clerk of Court is directed to enter a Final Judgment in favor of Defendant and against Plaintiff.

5. Defendant's Motion for Protective Order and Sanctions (Dkt. 51) shall remain pending before Magistrate Judge Julie S. Sneed.[4]

6. The Court reserves jurisdiction on the issue of Defendant's Motion for Protective Order and Sanctions (Dkt. 51).

**DONE** and **ORDERED** in Tampa, Florida on August 31, 2017.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

---

[4] The Court notes that the Magistrate Judge has scheduled a September 14, 2017 hearing on this motion.